IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : |
| | : CASE NO.: 7:20-CR-57-WLS-TQL-1 |
| JACOB ANTHONY GURTHRIE, | : |
| | : |
| | : |
| | : |
| | : |
| | : |

## ORDER

Before the Court are Defendant's Motion to Suppress Evidence, (Doc. 26) the Government's Response to Defendant's Motion to Suppress (Doc. 35), Defendant's Brief (Doc. 50) in support of his motion to suppress and the Government's Response Brief, (Doc. 51) which was filed on November 8, 2021. Pursuant to this Court's October 12, 2021 Order, (Doc. 49) Defendant had seven (7) days to file a reply brief if he desired to do so. Therefore, the date to file that reply brief was November 15, 2021. As Defendant has not filed a reply brief to date, the motions and briefs are now ripe for review.

As this Court concludes that law enforcement lawfully entered Defendant's residence with the consent of both the Defendant and his wife Mrs. Guthrie, who also resided in the residence, and the Smith & Wesson 9mm handgun was in plain view, Defendant's Motion to Suppress (Doc. 26) is **DENIED**.

## PROCEDURAL BACKGROUND

On December 10, 2019, Defendant Jacob Anthony Guthrie was charged in a one count indictment that alleged that Defendant had knowingly possessed a firearm despite knowing that he was under indictment for a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. 922(n) and 924(a)(1). (Doc. 1.) Defendant was arrested pursuant to that indictment on January 14, 2021. An arraignment hearing was held before the Honorable Magistrate Judge Thomas Q. Langstaff that same day, at which Defendant entered a plea of not guilty. (Doc. 14.)

1

On April 8, 2021 Defendant, through counsel, filed a Motion to Suppress. (Doc. 26.) Therein, Defendant requested that the Court suppress any and all evidence seized from a warrantless search of Defendant's home as well as any custodial statements made by Defendant following his arrest. (Id.) The Government filed a Response to the Motion on May 12, 2021. (Doc. 35.) This Court held an evidentiary hearing on June 8, 2021. (Doc. 37.) At that hearing the Government called one witness, Patrol Deputy Michael Nicolelli (hereinafter Deputy Nicolelli). The Defendant did not call any witnesses.[1] Pursuant to this Court's orders at the hearing as well as an Order dated October 12, 2021 (Doc. 49) Defendant and the Government then filed supplemental briefs. (Docs. 50; 51.)

## **FACTUAL FINDINGS**

The following facts are based upon the uncontradicted testimony of Deputy Nicolelli at the June 8, 2021 hearing.

On the evening of August 8, 2019, Deputy Nicolelli and Sergeant Clayton Godwin, who are both deputies with the Cook County Sherriff's Office, responded to a "911" call in relation to a domestic disturbance at 3450 Union Road, Adel, Georgia. (Doc. 48 at 8.) Upon arriving at the residence – a trailer home – the officers encountered Defendant, Jacob Guthrie, and his wife, Leslie Guthrie (hereinafter Mrs. Guthrie), standing outside next to a car. (Id., at 15.) It was apparent to the officers that Defendant and Mrs. Guthrie had been arguing. (Id.)

Mrs. Guthrie informed the officers that she had called 911 because she wanted to get her belongings and leave the residence until the situation calmed down. (Id., at 16.) It would appear that the Defendant had prevented Mrs. Guthrie from entering the residence prior to the officers' arrival, because Defendant and Mrs. Guthrie had been arguing about property. (*See* Id at 18.) At this time, with both the Defendant and Mrs. Guthrie's permission, Deputy Nicolelli accompanied Mrs. Guthrie into the residence so that she could pack her belongings.[2] Defendant remained outside with Sergeant Godwin.

---

[1] The Court notes for the purposes of the record that the Court advised the Defendant of his right to testify on his own behalf and present evidence at the proceeding. (Doc. 48 at 46-47.) The Defendant acknowledged that right and declined to testify. (Id., at 47-48.)

[2] (Doc. 48 at 18) Mr. McCommon: "Okay. So did one of you have his permission to accompany Leslie Guthrie into the trailer?" Michael Nicolelli: "As far as him stating yes he wanted someone to stand by while she gathered her things so she wouldn't take his belongings, yes." (Doc. 48 at 19) Mr. McCommon: "And,

2

While Mrs. Guthrie was packing her belongings she spoke with her mother, Ms. Sonja Swab, on the phone. (Id. at 19.) Deputy Nicolelli testified that he overheard Ms. Swab state "[H]e's on probation and I know there's guns inside that house, can I speak to one of the deputies[?]" (Id. at 20.) At this time Deputy Nicolelli got Sergeant Godwin who spoke with Ms. Swab. (Id.) Ms. Swab informed Sergeant Godwin that Defendant was on probation and that there were firearms inside the residence. (Id.) Sergeant Godwin then relayed that information to Patrol Deputy Michael Nicolelli. (Id.)

Deputy Nicolelli then asked Mrs. Guthrie whether she knew "the whereabouts of the firearms inside the house." (Id.) According to Deputy Nicolelli, Mrs. Guthrie "stated yes, and pointed towards the entertainment center inside the living room." (Id.) Deputy Nicolelli was only a few feet away from the entertainment center at the time Mrs. Guthrie pointed to it and noted that there was a firearm in plain view on the top shelf next to some flowers. (Id. at 22 & 38-39.) When questioned about whether her husband knew that the pistol was in the residence, Mrs. Guthrie stated that Defendant had threatened to "use the pistol to shoot up her car" earlier that week following another verbal altercation. (Id., at 27.)

Before departing the residence Deputy Nicolelli ran Defendant's information and determined that Defendant was a convicted felon under the First Offender Act. (Id., at 28.) After confirming that Defendant was a convicted felon Deputy Nicolelli seized the handgun.[3] (Id., at 29.) At no point prior to seizing the firearm did the officers apply for a search warrant.

## DISCUSSION

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As the movant, Defendant "bears the burdens

---

again, were you in that trailer with the consent and at the suggestion of the defendant, Jacob Guthrie?" Michael Nicolelli: "Yes, sir."

[3] The Court notes for the purposes of the record that a shotgun was also seized from a shed on the property. According to Mrs. Guthrie, Defendant kept the shotgun in the shed to shoot stray cats and rabbits. (Doc. 48 at 27.) The Government informed the Court at the hearing held on Defendant's Motion to Suppress that it was not going to contest the motion to suppress as to the shotgun. (Id., at 6.) Therefore, the shotgun is not at issue for the purposes of the Motion to Suppress.

3

of proof and persuasion" that his Fourth Amendment rights have been violated. *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998).

"[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Hartsfield v. Lemacks*, 50 F.3d 950, 954 (11th Cir. 1995). Defendant, through counsel, raises three separate points to contest the search in his Brief. (Doc. 50.) First, Defendant contends that law enforcement improperly entered the residence because they did not have a search warrant and no exigent circumstances authorized the warrantless entry into the home. (Id.) Second, Defendant contends even if law enforcement properly entered the home, based upon the Defendant and Mrs. Guthrie's consent, there was no valid consent to search for weapons. (Id.) Finally, Defendant contends that no plain view exception is available to validate the search. (Id.)

The Government responds that law enforcement lawfully entered the residence with Defendant's consent and that once they were in the residence the firearm was lawfully seized as it was in plain view. The Government states it its reply brief that it "is not relying on defendant's 'consent' to 'search.'"[4] (Doc. 51 at 5.)

This Court finds that the officers did not violate the Fourth Amendment because Defendant consented to their entrance into the residence and the firearm was in plain view. Accordingly, the Court declines to rule on the issue of whether the Defendant or his wife consented to a search of their home as it is not necessary to do so.

**I.      Defendant has Standing to Contest the August 8, 2019 Search and Seizure**

As an initial matter, this Court finds that the Defendant has standing to contest the August 8, 2019 search and seizure. Defendant has standing to contest the search because Defendant is able to "claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." *United States v. Jones*, 184 Fed. App'x 943, 947 (11th Cir. 2006). *See also United States v. Miravalles*, 280 F.3d 1328, 1331 (11th Cir. 2002) (A person has standing to contest the search when they have a legitimate expectation of privacy in the area searched that society is prepared to recognize as reasonable).

---

[4] As it is not necessary to do so the Court declines to find whether or not Mrs. Guthrie gave her consent to law enforcement to search the residence. It is not necessary to make this finding because once the Defendant and Mrs. Guthrie permitted Patrol Deputy Michael Nicolelli to be inside the trailer, he was in a place where he was lawfully entitled to be and the firearm was in plain view.

4

While a court must consider the totality of the circumstances in determining whether a person has standing to challenge a search or seizure, in the present case it is clear. *See United States v. McKennon*, 814 F.2d 1539, 1543 (11th Cir. 1987) ("Whether an individual possesses a constitutionally protected privacy interests depends upon the totality of the circumstances.") (citations omitted). It is clear that Defendant has standing to contest the search because the place searched was the Defendant's residence, a place where an individual holds a subjective expectation of privacy that society is prepared to recognize as reasonable. In addition, the Government has repeatedly "stated its position that it [does] not contest [D]efendant's standing to contest the search." (Doc. 51 at 1.)

Accordingly, this Court finds that under the totality of the circumstances Defendant has standing to challenge the search and subsequent seizure that occurred on August 8, 2019.

## II. The August 8, 2019 Search and Seizure did not Violate the Fourth Amendment

While Defendant does have standing to contest the August 8, 2019 search and seizure, this Court finds that the officers did not violate the Fourth Amendment when they entered the residence and seized Defendant's Smith & Wesson 9mm handgun. The officers did not violate the Fourth Amendment because according to the Supreme Court of the United States, the "Fourth Amendment recognizes a valid warrantless entry and search of the premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Georgia v. Randolph*, 547 U.S. 103, 106 (2006). In the present case there is no evidence to contest Deputy Nicolelli's testimony that he entered Defendant's home with both Defendant and Mrs. Guthrie's consent. (Doc. 48 at 18-19.) That testimony is also supported by the totality of the circumstances as shown by the evidence. Therefore, the fact that there were no exigent circumstances authorizing the warrantless entry into the home is of no consequence. Accordingly, this Court finds that the law enforcement officers did not violate the Fourth Amendment when they entered Defendant's home with Defendant's consent.[5]

---

[5] The Court notes for the purposes of the record that Defense Counsel's argument that there were no exigent circumstances justifying law enforcement entering the home is contradicted by Defendant's later admission in

5

Once law enforcement is lawfully inside a residence it is a well-established principal that they may seize contraband located in plain view when that contraband's incriminating nature is readily apparent.[6] Defendant through Counsel argues that no plain view exception is available to the Government as law enforcement was "never lawfully in the living room such that he could see the handgun" because law enforcement's "permission to be inside the home was limited to watching Mrs. Guthrie pack an overnight bag in their shared bedroom and bathroom." (Doc. 50 at 7.) Defendant's argument ignores two critical facts, however, and is therefore incorrect.

First, Defendant's argument ignores the fact that Defendant gave law enforcement permission to accompany Mrs. Guthrie inside the trailer to ensure that she did not take any of his belongings while she was packing. (Doc. 48 at 19.) It necessarily follows, the officers had permission to accompany Mrs. Guthrie wherever she went inside the home. In addition, there is no evidence to suggest that the Defendant or Mrs. Guthrie in any way limited the scope of their consent to the entryway of the residence as Defense Counsel now claims. Second, Defendant's argument ignores the undisputed testimony of Deputy Nicolelli that the entertainment stand in which the firearm was located was within a couple of feet of him when Mrs. Guthrie pointed to the firearm. (Doc. 48 at 22 & 38-39.) Accordingly, this Court finds that the deputy was in compliance with the requirements of the Fourth Amendment when he seized the Smith & Wesson 9mm handgun without a search warrant, because it was in plain view.

## CONCLUSION

In conclusion, the deputies did not violate the Fourth Amendment when they seized the Smith & Wesson 9mm handgun because they were lawfully entitled to be inside the residence, they had been made aware of Defendant's status as a felon, the firearm's incriminating nature was immediately apparent and the firearm was in plain view. *See Horton v.*

---

his brief that law enforcement was permitted to be inside the home for the limited purpose of watching Mrs. Guthrie pack an overnight bag. (Doc. 50 at 7.)

[6] "The plain-view doctrine permits the warrantless seizure of an object where an officer is lawfully located in a place from which the object can be plainly viewed, the officer has a lawful right of access to the object, and the incriminating character of the object is 'immediately apparent.'" *United States v. Reeves*, 604 Fed. App. 823, 826 (11th Cir. 2015) (quoting *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006).

6

*California*, 496 U.S. 128 (1990). For these reasons, Defendant's Motion to Suppress Evidence (Doc. 26) is **DENIED**.

**SO ORDERED**, this __19th__ day of November, 2021.

__/s/ W. Louis Sands__
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**
